IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| SHANE SCOFIELD, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br>    v.<br><br>DEEPER GREEN BENEFIT LLC D/B/A NEIGHBORHOOD SUN<br><br>and<br><br>SHARED SOLAR ADVISOR USA, LLC<br><br>                          Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Shane Scofield ("Mr. Scofield"), by his undersigned counsel, for this class action complaint against Defendant Deeper Green Benefit LLC d/b/a Neighborhood Sun and Shared Solar Advisor USA, LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.    INTRODUCTION

1. <u>Nature of Action</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls

to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Deeper Green Benefit LLC d/b/a Neighborhood Sun to use third-party lead generation and marketing companies, including Shared Solar Advisor USA, LLC, to send pre-recorded telemarketing calls to cellular telephones, which is prohibited by the TCPA.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making prerecorded telemarketing calls to cellular telephone numbers, including his own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.   PARTIES

5. Plaintiff Scofield is an individual who resides in the District of Colorado.

6. Defendant Deeper Green Benefit LLC d/b/a Neighborhood Sun is a company that sells individuals electricity generated by commercial solar panel farms, commonly called "community solar." Its headquarters and principal place of business is in Silver Spring, Maryland.

7. Defendant Shared Solar Advisor USA, LLC is a marketing company that makes illegal telemarketing calls specializing in obtaining customers interested in community solar. Its headquarters and principal place of business is in Bloomington, Minnesota.

### III. JURISDICTION AND VENUE

8. <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9. <u>Personal Jurisdiction</u>: The Court has specific personal jurisdiction over Defendants because they contracted with each other to send illegal telemarketing, including into Colorado.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this District.

### IV. BACKGROUND AND FACTS

A.  **Calls Made Using a Pre-Recorded Message**

11. The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

12. Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

13. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

14. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

B.  **Unsolicited Telemarketing to Plaintiff**

15. Plaintiff Scofield is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Defendants were and at all times mentioned herein were "persons" as defined by 47 U.S.C. § 153(39).

17. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the pre-recorded call at issue.

18. Plaintiff's residential cellular telephone number is (970)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

19. Plaintiff Scofield never consented to receive calls from Defendants.

20. Plaintiff Scofield never did business with the Defendants.

21. Despite this, on February 8, 2024 at 1:52 PM, the Plaintiff received a call on the aforementioned number from the caller ID 970-491-1605.

22. When Plaintiff answered, a message began playing. The pre-recorded message stated:

> This is a public service announcement regarding your electric bill. With Excel, you are eligible for a 10% discount and we have no record of you requesting it. There is a new law in Colorado that requires Excel to allow their customers to sign up at no cost and receive a 10% discount on their electric bill. Press one to learn how to request your discount or nine to be removed. Thank you.

23. The call was clearly pre-recorded because (a) the call was obviously scripted, (b) the recording had a generic, monotone voice, (c) it would be illogical for a human to call someone and ask them to press touch tones instead of engaging in dialogue, and (d) the Plaintiff's noise or speech did nothing to stop the recording.

24. Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified the number that called as a robocaller. *(970) 491-1605 is an Energy Utility Robocall*, NOMOROBO (Feb. 21, 2024), https://www.nomorobo.com/lookup/970-491-1605.

25. Plaintiff pressed "1" on the call to identify the identity of the caller who was calling him illegally.

26. The Plaintiff was then transferred to a human being named "Sara." "Sara" attempted to pitch the Plaintiff on a community solar farm program and stated that a solar advisor would be in the Plaintiff's area and that the Plaintiff would receive a visit at his home around 5:00 PM.

27. Nobody ever came to the Plaintiff's house.

28. Instead, at 5:18 PM, the Plaintiff received a voicemail on his cell phone from the caller ID 317-900-6467. The message stated, "Hey Shane. My name is Jackson Slate. I was scheduled to come out to you around 5 PM to talk to you about an energy discount you're

5

eligible for on the electric bill with Excel. Popped by the home and didn't get a response, so if you could call me back to set up another time at 317-900-6467, that would be awesome. Thanks Shane."

29. When Shane attempted to ascertain the Mr. Slate's identity, he had a text conversation with him. In that conversation, Mr. Slate state that he went to an address on W. Kenyon Drive, which is not the Plaintiff's address, and that he was with a "solar garden" operator called Neighborhood Sun.

30. The calls were unwanted.

31. The calls were nonconsensual encounters.

32. Plaintiff then contacted Neighborhood Sun to ascertain why he was receiving illegal calls.

33. The Plaintiff received a response from Cara Humphrey, who confirmed that it hired Shared Solar Advisors to make the illegal call, that Shared Solar Advisors was responsible for the prerecorded call Plaintiff received, and that "Shared Solar Advisors can better speak to their phone lists, do not call scrubbing and the telemarketing registration and their attention to local regulations."

34. Plaintiff then emailed Owen Lewis, Shared Solar's Chief Information Officer, to ascertain why he got the illegal prerecorded call.

35. Mr. Lewis stated that Plaintiff's "decision to Press 1 during the automated [prerecorded] call" constituted Plaintiff's consent, "digitally," to receive the prerecorded call, which had already been placed by that point.

36. Mr. Lewis is wrong. The TCPA requires *prior* consent to place a call; a telemarketer cannot retroactively obtain consent during an illegal prerecorded call. 47 U.S.C § 227(b)(1)(A).

37. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

38. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

39. The FCC has instructed that sellers such as Neighborhood Sun may not avoid liability by outsourcing telemarketing to third parties, such as Shared Solar:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

40. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

7

41. Neighborhood Sun is liable for telemarketing calls placed by Shared Solar and transferred to Neighborhood Sun to generate customers for Neighborhood Sun, including the Plaintiff.

42. Neighborhood Sun was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

43. To do so, it hired Shared Solar to orchestrate an *en masse* telemarketing campaign.

44. Neighborhood Sun controlled the day-to-day activities of Shared Solar by providing the specific criteria for the leads it would accept and required its vendors, including Shared Solar, to adhere to those criteria.

45. For example, the calls Plaintiff receive demonstrate that Neighborhood Sun required Shared Solar to provide an address where a Neighborhood Sun representative would visit.

46. Neighborhood Sun would not compensate Shared Solar for a call it made unless the leads it purchased met the criteria and it personally paid a visit to the potentially interested customer.

47. Neighborhood Sun also restricted the geographic region that Shared Solar could contact.

48. As such, Neighborhood Sun controlled the content of Shared Solar's telemarketing.

49. Finally, Neighborhood Sun could have terminated Shared Solar once it learned of Shared Solar's illegal prerecorded marketing conduct.

50. It did not.

51. Indeed, it directed Shared Solar to handle all the phone lists, do not call scrubbing, telemarketing registration, and attention to local regulations on its behalf.

52. A reasonable seller whose telemarketers are making calls would not practice willful ignorance into that marketer's phone lists, scrubbing, registration, and regulatory compliance.

53. Moreover, a reasonable seller would also investigate into the reasons why their marketer would be calling numbers on the National Do Not Call Registry and, moreover, with highly illegal prerecorded messages.

54. Indeed, Neighborhood Sun could have investigated if the transfers it received were on the National Do Not Call Registry, whether the addresses provided by Shared Solar were accurate, or if Shared Solar was using prerecorded messages.

55. It admitted that it did not.

56. Neighborhood Sun hired Shared Solar without a proper investigation and did not terminate them when they were informed of Shared Solar's illegal calling conduct.

57. As such, they knowingly ratified Shared Solar's conduct.

58. Neighborhood Sun accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

59. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

60. Plaintiff's privacy has been violated by the above-described telemarketing call.

61. Plaintiff never provided his consent or requested the call.

62. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V. CLASS ACTION ALLEGATIONS

63. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **TCPA Robocall Class**: All persons within the United States: (1) to whose cellular telephone number, specialized mobile radio number, other radio common carrier number, or any service for which the called party is charged for the call, (2) either Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) from four years prior to the filing date of this Complaint through trial (4) using an identical or substantially similar pre-recorded message used to place the telephone call to Plaintiff.

64. Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

65. The Class, as defined above, is identifiable through telephone records and telephone number databases.

66. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

67. Individual joinder of these persons is impracticable.

68. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

69. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

70. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

71. This class action complaint seeks injunctive relief and money damages.

72. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

  (a) Whether the Defendants used pre-recorded messages to send telemarketing calls;

  (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

  (c) whether Defendants' conduct constitutes a violation of the TCPA;

  (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

  (e) whether Defendants are vicariously liable for calls placed by telemarketing vendors, if any.

73. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

74. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

75. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

76. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

77. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other

persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

### FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(b) on behalf of the Robocall Class

78. Plaintiff incorporates the allegations in paragraphs 1-79 as if fully set forth herein.

79. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

80. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

81. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

82. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B. Certification of the proposed Class;

C. Appointment of Plaintiff as representative of the Class;

D. Appointment of the undersigned counsel as counsel for the Class;

E. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

F. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this March 7, 2024.

                                                     */s/ Andrew Roman Perrong*
                                                   Andrew Roman Perrong, Esq.

Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*

15